Filing # 98206252 E-Filed 10/31/2019 04:27:31 PM

# IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
## IN AND FOR LEE COUNTY, FLORIDA
### CIRCUIT CIVIL DIVISION

SCOTTIE ALEXANDER,
*on behalf of himself and on behalf
of all others similarly situated,*

    Plaintiff,

v.                                CASE NO.:

ENVISION HEALTHCARE CORP.;
AMSURG CORP. and CAPE CORAL/FT.
MYERS ENDOSCOPY ASC, LLC d/b/a
GULF COAST ENDOSCOPY CENTER,

    Defendants.
_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Scottie Alexander ("Plaintiff"), pursuant to Fed. R. Civ. 15(a)(1)(B), files this Class Action Complaint against Defendants, Envision Healthcare Corporation ("Envision"), AmSurg Corp. ("AmSurg"), and Cape Coral/Ft. Myers Endoscopy ASC, LLC d/b/a Gulf Coast Endoscopy Center ("GCEC"), (collectively, "Defendants") for violations of the Fair Credit Reporting Act of 1970, as amended ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and in support thereof states as follows:

### NATURE OF THE CASE

1. Plaintiff brings this action against Defendants for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a–1681x. The FCRA imposes several important requirements on employers that use a background checks as part of their hiring processes, which are designed to protect consumers like Plaintiff.

2. Defendant Envision is a foreign corporation headquartered in Nashville, Tennessee and doing business in Lee County, Florida.

3. Defendant AmSurg is a foreign corporation headquartered in Nashville, Tennessee and doing business in Lee County, Florida. Defendant AmSurg is a subsidiary of Envision.

4. Defendant GCEC is a foreign corporation headquartered in Nashville, Tennessee and doing business in Lee County, Florida. GCEC is a subsidiary of Envision and AmSurg.

5. As part of its hiring processes, Defendants use consumer reports (commonly known as background checks) to make employment decisions. Because such employment decisions are based in whole or in part on the contents of the background checks, Defendants must adhere to the strict requirements of the FCRA.

6. First, Defendants violated the FCRA's requirement that, prior to procuring a consumer report for employment purposes, a prospective employer must disclose that it is going to procure a consumer report "in a document consisting solely of the disclosure." This conduct violates 15 U.S.C. §1681b(b)(2)(A)(i).

7. The standard forms utilized by Defendants fail to comply with this long-standing statutory requirement. In fact, in *Jones v. Halstead Mgmt. Co.*, LLC, 81 F. Supp. 3d 324 (S.D.N.Y. 2015) the Court held that a meaningfully identical FCRA disclosure and consent form, also obtained by the defendant from Sterling, violated §1681b(b)(2)(A)(i).

8. Despite the fact that the *Halstead* Order came out in January of 2015, in this case Defendants continued using the same form when it was provided to Plaintiff and the other members of the putative classes in this action. This is precisely the kind of willful and reckless behavior the FCRA prohibits.

9. Plaintiff brings a class claim against Defendants for violation of 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring consumer reports on Plaintiff and other putative class members for employment purposes without first making proper disclosures to them in the format required by

the statute. Under this subsection of the FCRA, Defendants are required to disclose to their employees and applicants—in a document that consists solely of the disclosure—that it may obtain a consumer report on them for employment purposes. This disclosure must be made by employers prior to obtaining copies of employees', or prospective employees', consumers reports. Defendants willfully violated this requirement by failing to provide Plaintiff and other putative class members with a copy of a separate document solely consisting of Defendants' disclosure.

10. Second, Defendant violated 15 U.S.C. § 1681b(b)(2)(A)(ii) by obtaining consumer reports for Plaintiff and other putative class members without proper authorization, due to the fact that its disclosure forms fail to comply with the requirements of the FCRA. One cannot meaningfully authorize her employer to take an action if he does not grasp what that action entails.

11. Plaintiff brings these claims against both Defendants because at least one, if not both, has violated the standalone disclosure requirement.

## JURISDICTION AND VENUE

12. This is an action for damages in excess of $15,000.00, exclusive of interest, fees, and costs.

13. This Court has jurisdiction under the FCRA, 15 U.S.C. §1681n and 1681p.

14. This Court has personal jurisdiction over Defendants under the Florida Long Arm Jurisdiction Act, Fla Stat. Section§ 48.193, as Plaintiff applied to work and worked for Defendants in Lee County, Florida. Furthermore, this Court's exercise of personal jurisdiction is constitutionally sound. Through their operations throughout the State of Florida, including in Lee County, Defendants have established sufficient minimum contacts with the State of Florida.

15. Venue is proper in Lee County, Florida, because all of the events giving rise to these claims arose in this County. Defendants employed Plaintiff in this County. Defendants will

3

suffer no unfair prejudice from the exercise of this Court's personal jurisdiction, which serves the interests of justice in this case.

## PARTIES

16. Plaintiff is a "consumer" as protected and governed by the FCRA.

17. Defendant Envision is a Tennessee for-profit corporation and is an employer as defined by the FCRA.

18. Defendant AmSurg is a Tennessee for-profit corporation and is an employer as defined by the FCRA.

19. Defendant GCEC is a Tennessee for-profit corporation and is an employer as defined by the FCRA.

## FACTUAL ALLEGATIONS

### *Defendants' Willful Violation of 15 U.S.C. § 1681b(b)(2)*

20. Defendants are liable for willfully violating Section 1681b(b)(2) of the FCRA by procuring or causing to be procured a consumer report for employment purposes without first providing a clear and conspicuous disclosure in writing to the consumer in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes.

21. Plaintiff initially applied to work for in April of 2018. When he first applied Plaintiff received Defendants' Job Application, as do all job applicants, which is comprised of a packet documents.

22. Included among the packet are several documents related to the FCRA, all of which are presented simultaneously and, thus, cannot possibly be construed as compliant with the FCRA's stand-alone disclosure mandate.

23. Attached here to as Exhibit A is the "Sterling disclosure", which Defendants presented to Plaintiff in his hiring paperwork and relied upon, at least in part, to purportedly satisfy

4

their obligations under Section 1681b(b)(2). But, as already explained in *Jones v. Halstead Mgmt. Co., LLC*, 81 F. Supp. 3d 324, 333 (S.D.N.Y. 2015), the Sterling disclosure is not a stand-alone document and violates Section 1681b(b)(2) of the FCRA.

24. The same conclusion has repeatedly reached by a consensus of other United States District Court cases considering the exact same defense arguments and the exact same "Sterling" form. *See. e.g. Case v. Hertz Corp.*, No. 15-CV-02707-BLF, 2016 WL 1169197, at *5 (N.D. Cal. Feb. 26, 2016) (denying motion to dismiss § 1681b(b)(2)(i) claim brought by plaintiff based on same Sterling form at issue); *Robrinzine v. Big Lots Stores, Inc.*, 2016 U.S. Dist. LEXIS 5689, *2 (N.D. Ill. Jan. 19, 2016) (same); *Martin v. Fair Collections & Outsourcing, Inc.*, 2015 U.S. Dist. LEXIS 86129, *14 (D. Md. June 29, 2015)

25. For example, the Sterling disclosure contains in "eye-straining tiny typeface writing" the following extraneous information:

a) At least *twelve* different state law notices informing consumers of their additional rights under California, Connecticut, Maine, Maryland, Massachusetts, Minnesota, New Jersey, New York, Oklahoma, Oregon, Vermont, and Washington State (none of which are remotely relevant to Plaintiff);

b) A misleading statement that if Defendants "makes a conditional decision to disqualify me based on all or in part on my Report, I will be provided with a copy of the Report and another copy of the Summaries of Rights";

c) A misleading statement stating that if a consumer, like Plaintiff, disagrees with the "accuracy of the purported disqualifying information in

5

the Report, [he/she] must notify [Defendant] within five business days of my receipt of the Report that I am challenging the accuracy of such information with Sterling";

d) the name, address and telephone of "the nearest unit of the consumer reporting agency designated to handle inquiries regarding the investigative consumer report" (interestingly, the form lists two separate units, not both of which could be the "nearest");

e) three boxes purporting to explain the nature and scope of the investigation sought, including a criminal background check, Social Security Number trace, Consumer Credit Report, and Sex Offender Search; and, finally,

f) a forced acknowledgement that Plaintiff and the putative class members had to agree to indicating that they had been given documents, including "A Summary of Your Rights Under the Fair Credit Reporting Act," when, in fact, that did not happen.

26. As explained by the Court in *Halstead* three-plus years before Plaintiff was provided with the violative Sterling disclosure form, "all of those extraneous additions to the form stretched what should be a simple disclosure form to two full pages of eye-straining tiny typeface writing." *Jones v. Halstead Mgmt. Co.*, LLC, 81 F. Supp. 3d 324, 333 (S.D.N.Y. 2015).

27. This extraneous information misled and confused Plaintiff.

28. Additionally, it distracted his attention away from what was supposed to be the focus of the document: to alert Plaintiff that a consumer report was to be procured on him for employment purposes.

6

29. Plaintiff would not have signed the disclosure form(s) if he had known it/they were not compliant with 15 U.S.C. § 1681b(b)(2)(A)(i). The only reason he signed any of the documents at issue was because he had no choice if he wanted a job.

30. Defendants' violations of 15 U.S.C. § 1681b(b)(2)(A)(i) were knowing and reckless. Defendants knowingly and recklessly disregarded the plain meaning of 15 U.S.C. § 1681b(b)(2)(A), as well as guidance from the Federal Trade Commission and numerous court decisions, including, for example, *Jones v. Halstead Mgmt. Co., LLC*, 81 F. Supp. 3d 324, 333, 2015 U.S. Dist. LEXIS 12807, *18 (S.D.N.Y. 2015), stating that the inclusion of extraneous information in the disclosure required under § 1681b(b)(2)(A) is a violation of the FCRA.

31. Defendants knew they had an obligation to provide a stand-alone disclosure before procuring a consumer report, but chose to place its own interests ahead of the rights of consumers.

32. Defendants did not procure Plaintiff's report in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer.

33. Defendants repeatedly used the same multiple disclosure forms to procure background reports on numerous other applicants and employees.

34. By systematically inserting extraneous information into Plaintiff's and other current or prospective employees' disclosures, Defendants knowingly and willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i) by confusing and misleading Plaintiff and the putative Background Check class members.

35. Plaintiff and the putative Background Check class members were damaged by Defendants' actions. **First**, as to the § 1681b(b)(2)(A)(i) and (ii) claims, in accordance with the

Eleventh Circuit's recent decision in *Church v. Accretive Health, Inc.*, 2016 U.S. App. LEXIS 12414, *1 (11th Cir. July 6, 2016), Plaintiff and the putative Background Check class members suffered a concrete informational injury because Defendants failed to provide Plaintiff with information to which he was entitled to by statute, namely a stand-alone FCRA disclosure form. Through the FCRA, Congress has created a new right—the right to receive the required disclosure as set out in the FCRA—and a new injury—not receiving a stand-alone disclosure. The Plaintiff's "inability to obtain [that] information" is therefore, standing alone, "a sufficient injury in fact to satisfy Article III." *Spokeo*, 136 S. Ct. at 1549.

36. Pursuant to § 1681b(b)(2), Plaintiff and the putative Background Check class members were entitled to receive certain information at a specific time, namely a disclosure that a consumer report may be procured for employment purposes in a document consisting solely of the disclosure. Such a disclosure was required to be provided to Plaintiff before the consumer reports were to be procured. By depriving Plaintiff of this information, Defendants injured Plaintiff and the putative class members they seek to represent.

37. **Second**, as to the § 1681b(b)(2)(A)(i) and (ii) claims, Defendants invaded Plaintiff's right to privacy. Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (*i.e.*, disclosure and authorization) set forth in the following subsections: 15 U.S.C. § 1681b(b)(2). As one court put it, "[t]he FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and receiving the consumer's written authorization." *Harris v. Home Depot U.S.A., Inc.*, 114 F. Supp. 3d 868, 869 (N.D. Cal. 2015). Plaintiff's consumer reports contained a wealth of extremely private information which Defendants had no right to access absent a specific Congressional license to do so. The

8

consumer reports Defendants obtained on Plaintiff and the putative Background Check class members included, *inter alia*, dates of birth, partial social Security Number, address history, phone number, e-mail address, information about his credit history, criminal history record search, etc. By procuring reports containing this private information without complying with first complying with the FCRA's disclosure requirements, Defendants illegally invaded Plaintiff's and the putative Background Check class members' rights to privacy.

38. **Third**, as to the § 1681b(b)(2)(A)(i) and (ii) claims, Defendants' above violations created a risk of harm that Plaintiff and the putative Background Check class members would be harmed in precisely the way Congress was attempting to prevent when it mandated what disclosures employers must make to applicants. Without accurate source information as to what to do if the information in their reports was inaccurate, a consumer would be left confused as to where to go to correct erroneous data contained in a report and be unable to know whether any erroneous data would find its way into future consumer reports.

39. Furthermore, Plaintiff would not have agreed to provide Defendants with access to his consumer reports had he known Defendants' FCRA Disclosure Form was non-compliant.

40. As detailed above, *Spokeo* expressly recognized that "the risk of real harm" can be enough, on its own, to satisfy the concreteness requirement. 136 S. Ct. at 1549. In particular, where Congress has found that a violation of a statutory right poses a "material risk of harm," a plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549–50; *see also id.* at 1553 (Thomas, J., concurring) ("A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right.").

41. **Fourth**, as to the § 1681b(b)(2)(A)(i) and (ii) claims, the harm created by Defendants is also concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful

9

disclosure of legally protected information. Insofar as *Spokeo* directs us to consider whether an alleged injury-in-fact "has traditionally been regarded as providing a basis for a lawsuit," Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private. *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 134 (3d Cir. 2015). Congress's reasons for enacting the FCRA show that it intended that the law be construed to promote the credit industry's responsible dissemination of accurate and relevant information, and afford consumers the substantive right to receive certain specified information, including a stand-alone disclosure *before* their consumer reports are obtained by prospective employers. Thus, Plaintiffs have alleged an injury-in-fact based on Congress's having created a substantive legal right, the invasion of which creates standing.

42. Based on the foregoing violations, Plaintiff asserts FCRA claims against Defendants on behalf of himself and a class of Defendants' employees, and prospective employees. On behalf of himself and the Putative Classes, Plaintiff seeks statutory damages, costs and attorneys' fees, equitable relief, and other appropriate relief pursuant to the FCRA.

## RULE 23 REQUIREMENTS

43. Plaintiff asserts his claims in Counts 1 and 2 on behalf of a Putative Background Check Class defined as follows:

> **All of employees and job applicants in the United States and who were the subject of a consumer report procured by any of the Defendants within five years of the filing of this complaint through the date of final judgment not provided a disclosure compliant with 15 U.S.C. § 1681b(b)(2)(A).**

44. <u>Numerosity</u>: The Putative Classes are so numerous that joinder of all Class members is impracticable. Defendants regularly obtain and uses information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently

10

relies on such information, in whole or in part, as a basis for adverse employment action. Plaintiff is informed and believes that during the relevant time period, thousands of Defendants' employees and prospective employees satisfy the definition of the Putative Classes.

45. <u>Typicality</u>: Plaintiff's claims are typical of the members of the Putative Classes. Defendants typically uses consumer reports to conduct background checks on employees and prospective employees. The FCRA violations suffered by Plaintiff are typical of those suffered by other Putative Class members, and Defendants treated Plaintiff consistent with other Putative Class members in accordance with its standard policies and practices.

46. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Putative Classes, and has retained counsel experienced in complex class action litigation.

47. <u>Commonality</u>: Common questions of law and fact exist as to all members of the Putative Classes and predominate over any questions solely affecting individual members of the Putative Classes, including but not limited to:

    a) Whether Defendants use consumer report information to conduct background checks on employees and prospective employees;

    b) Whether Defendants' background check practices and/or procedures comply with the FCRA;

    c) Whether Defendants violated the FCRA by procuring consumer report information without making proper disclosures in the format required by the statute;

    d) Whether Defendants violated the FCRA by procuring consumer report information based on invalid authorizations;

    e) Whether Defendants' violations of the FCRA were willful;

  f)  The proper measure of statutory damages;

  g)  The proper measure of actual damages (if greater than statutory damages); and

  h)  The proper form of injunctive and declaratory relief.

48. This case is maintainable as a class action because prosecution of actions by or against individual members of the Putative Class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants. Further, adjudication of each individual Class member's claim as separate action would potentially be dispositive of the interest of other individuals not a party to such action, impeding their ability to protect their interests.

49. This case is maintainable as a class action because Defendants acted or refused to act on grounds that apply generally to the Putative Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

50. Class certification is also appropriate because questions of law and fact common to the Putative Classes predominate over any questions affecting only individual members of the Putative Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA.

51. Members of the Putative Classes do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not

present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

52. Plaintiff intends to send notice to all members of the Putative Classes to the extent required by the applicable rules of civil procedure. The names and addresses of the Putative Class members are available from Defendants' records.

## FIRST CLASS CLAIM FOR RELIEF
### Failure to Make Proper Disclosure in Violation of
### 15 U.S.C. § 1681b(b)(2)(A)(i)

53. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

54. In violation of the FCRA the background check Defendants required the Background Check Class to complete as a condition of their employment with Defendants does not satisfy the disclosure requirements of 15 U.S.C. § 1681b(b)(2)(A)(i) because Defendants failed to provide a stand-alone document as to the consumer report information being obtained and utilized.

55. Defendants violated the FCRA by procuring consumer reports relating to Plaintiff and other Background Check Class members without first making proper disclosures in the format required by 15 U.S.C. § 1681b(b)(2)(A)(i). Namely, in a stand-alone document.

56. The foregoing violations were willful. Defendants knew they were required to provide a stand-alone form (separate from the employment application) prior to obtaining and then utilizing a consumer report on the Background Check Class members. By failing to do so Defendants acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Background Check Class members under 15 U.S.C. § 1681b(b)(2)(A)(i).

57. Defendants knew or should have known about its legal obligations under the

13

FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and long-established case law. Defendants obtained or had available substantial written materials which apprised it of its duties under the FCRA. Any reasonable employer knows about or can easily discover these mandates.

58.  Defendants' willful conduct is also reflected by, among other things, the following facts:

   a) approximately three years before Plaintiff's Complaint in this case was filed (meaning the opinion was readily available to Defendants and their counsel and before Plaintiff applied to work for it), another United States District Court, *Jones v. Halstead Mgmt. Co., LLC*, 81 F. Supp. 3d 324 (S.D.N.Y. Jan. 27, 2015), held that a nearly identical form from the same consumer reporting agency utilized by Defendants, Sterling, was not a stand-alone disclosure;

   b) additional federal district courts reached this same conclusion, including in *Case v. Hertz Corp.*, No. 15-CV-02707-BLF, 2016 WL 1169197, at *5 (N.D. Cal. Feb. 26, 2016) (denying motion to dismiss § 1681b(b)(2)(i) claim brought by plaintiff based on same Sterling form at issue); *Robrinzine v. Big Lots Stores, Inc.*, 2016 U.S. Dist. LEXIS 5689, *2 (N.D. Ill. Jan. 19, 2016) (same); *Martin v. Fair Collections & Outsourcing, Inc.*, 2015 U.S. Dist. LEXIS 86129, *14 (D. Md. June 29, 2015) (denying motion to dismiss and holding "FCO's disclosure form, being almost identical to those in Miller and Jones, contained more information than would seem to be acceptable under 15 U.S.C. § 1681b(b)(2) which requires the form to consist 'solely of the

disclosure' ");

c) Defendants are large corporations with access to legal advice through its own general counsel's office and outside employment counsel;

d) There is no contemporaneous evidence that Defendants determined that their conduct was lawful;

e) Defendants knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute and/or available case law;

f) Defendants voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and, finally,

g) the consumer reporting agency that provided Plaintiff's consumer report information to Defendants (Sterling) has published numerous FCRA-related articles and compliance self-help materials and made them available to Defendants through its website, including as the proper information to ensure compliance with the FCRA's stand-alone disclosure requirement.

59. Plaintiff and the Background Check Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2).

60. Plaintiff and the Background Check Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

**SECOND CLASS CLAIM FOR RELIEF**
**Failure to Obtain Proper Authorization in Violation of FCRA 15 U.S.C. § 1681b(b)(2)(A)(ii)**

61. Plaintiff alleges and incorporates by reference the allegations in the preceding

paragraphs

62. Defendants violated the FCRA by procuring consumer reports relating to Plaintiff and other Background Check Class members without proper authorization. See 15 U.S.C. § 1681b(b)(2)(A)(ii).

63. The foregoing violations were willful. Defendants acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Background Check Class members under 15 U.S.C. § 1681b(b)(2)(A)(ii). The authorization requirement follows the disclosure requirement of § 1681b(b)(2)(A)(i) and presupposes that the authorization is based upon a valid disclosure. One cannot meaningfully authorize his employer to take an action if he does not grasp what that action entails.

64. Defendants knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and case law available to Defendants years before Plaintiff and the putative class members whom she seeks to represent applied to work for it. Defendants obtained or had available substantial written materials which apprised it of its duties under the FCRA. Any reasonable employer knows about or can easily discover these mandates.

65. Defendants' willful conduct is also reflected by, among other things, the following facts: Defendant are large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is no contemporaneous evidence that they determined that their conduct was lawful; Defendants knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA, case law (including and especially *Jones v. Halstead Mgmt. Co.*, LLC, 81 F. Supp. 3d 324 (S.D.N.Y. 2015), and the plain language of the statute; and, finally, Defendants voluntarily ran a risk of violating the law

16

substantially greater than the risk associated with a reading that was merely careless.

66. Plaintiff and the Background Check Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2).

67. Plaintiff and the Background Check Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

**PRAYER FOR RELIEF**

68. WHEREFORE, Plaintiff, on behalf of himself and the Putative Class, prays for relief as follows:

    a) Determining that this action may proceed as a class action under Rule 23(b)(1), and (2) and (3) of the Federal Rules of Civil Procedure;

    b) Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the Putative Classes;

    c) Issuing proper notice to the Putative Classes at Defendants' expense;

    d) Declaring that Defendants committed multiple, separate violations of the FCRA;

    e) Declaring that Defendants acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

    f) Awarding statutory damages as provided by the FCRA, including punitive damages;

    g) Awarding reasonable attorneys' fees and costs as provided by the FCRA;

    h) Granting other and further relief, in law or equity, as this Court may

deem appropriate and just.

## DEMAND FOR JURY TRIAL

69. Plaintiff and the Putative Class demand a trial by jury.

DATED this 31st day of October, 2019

                Respectfully submitted,

                */s/Brandon J. Hill*
                **BRANDON J. HILL**
                Florida Bar Number: 37061
                Direct No.: 813-337-7992
                **LUIS A. CABASSA**
                Florida Bar Number: 053643
                Direct No.: 813-379-2565
                **WENZEL FENTON CABASSA, P.A.**
                1110 North Florida Ave., Suite 300
                Tampa, Florida 33602
                Main No.: 813-224-0431
                Facsimile: 813-229-8712
                Email: lcabassa@wfclaw.com
                Email: bhill@wfclaw.com
                Email: gnichols@wfclaw.com
                Email: tsoriano@wfclaw.com
                Email: rcooke@wfclaw.com
                **Attorneys for Plaintiff**